DUNCAN, &c.
*vs.*
BROWN.

## Duncan, &c. *vs.* Brown.

Case 26.

1. After a demurrer to a petition is overruled, and answer filed, no objection to the declaration is available unless it amount to cause for arresting the judgment.

2. To write and publish of one, that he would put his name to any thing that another would request him to sign, that would prejudice a third person, is *prima facie* libelous.

3. The mere reference in an ordinary petition to papers alleged to constitute a libel, does not make them part of the petition, or authorize the reading of them to the jury, without proof of their execution.

4. Although the publication of libelous matter may not be justifiable, yet the law so far regards the passions and infirmities of men as to permit circumstances of provocation, though not amounting to a justification, to be given in evidence to palliate and weaken the inference of malice, and mitigate the damages.

5. The court should not instruct the jury that matter which is *prima facie* libelous was justifiably published, without informing the jury what would justify such a publication.

6. In a suit for libel growing out of an ecclesiastical controversy, it is proper to instruct the jury that damages can be assessed for the individual injury alone, and not for any injury to the church, or other members than the plaintiff.

7. The words of a publication charged to be libelous, are to be taken according to their ordinary and common acceptation.

The case is fully stated in the opinion of the court.

*Wintersmith,* for appellants—

Argued—1. That the appellants had fully · sustained their plea avering the truth of the publica-

tion charged to be libelous, by showing that the plaintiff, by reason of his general bad character and conduct, had given them good reason to believe he would state a falsehood to injure one to whom he was inimical.

2'. That the Circuit Court had erred in its instructions to the jury by instructing them "that unless the plaintiff was so corrupt and depraved that he would sign anything Z. M. Taylor would request him to sign, to injure Duncan's character, they should find for the plaintiff; and if defendants proved that Brown was so corrupt, &c., they should find for them." This instruction is clothed in language stronger than that used in the publication, and was not justified by the facts in the case. (*See Starkie on Libel*, 2d Ed. *vol.* 1, *page* 54 *to* 60; *Hart vs. Reed*, 1 *B. Monroe*, 168–9.)

The language in such publications are not to be taken in *graviori sensu* or *mitiori sensu*, but in their ordinary and common acceptation, and the interpretation is to be left to the jury. We complain that the court, in this case, took from the jury the right to interpret the words of the publication, and gave to them a meaning not contemplated by the publisher—such an one as would strike the common reader. The defendants did not mean to impute to plaintiff corruption and fraud. A clear distinction is to be observed in the publication between what they *assert* to be true and what they *believe* to be true. In regard to what they assert they *believe* it is sufficient to show that they had good reason for their belief. In regard to what is asserted to be true, it might more properly be required of them to prove that it was true in fact.

3. The Circuit Court was asked by the appellant's counsel to instruct the jury in substance, that malice was the gist of the action, and that to render them liable the jury must believe that the publication was made maliciously and without a justifiable cause, which was refused, and the court undertook to withdraw the question of malice from the jury, except so

far as might go in aggravation or mitigation of damages, and decided that the occasion of the publication was not of such a character as in any way to influence their finding. In this decision it is insisted the court erred. Such an instruction was calculated to mislead the jury.

The attention of the court is called to the appellee's instructions generally. They are too strong, and the jury are not left at liberty to give due weight to the circumstances of mitigation existing in the proof. A reversal is asked.

*J. H. Jewitt*, on the same side—

This action is for a libel for publishing the following written document: "We, the undersigned, do certify that we have known Robert R. Brown from his boyhood to the present, and we know that he has been an enemy to the Rev. Peter Duncan both before and since he the said Duncan left the Methodist Episcopal Church, and believe that he (Brown) would put his name to anything that Z. M. Taylor would request him to sign, that would prejudice said Duncan's character." Signed.

A demurrer was filed to the petition, which being overruled, the defendants filed a joint answer. A trial was had and a verdict rendered for the plaintiff for $350 in damages. The defendants moved the court for a new trial on grounds filed, which being overruled, they have appealed to this court.

1. The first question for decision is whether the publication of the certificate amounts to a libel.

The certificate asserts one fact, to-wit: that plaintiff, Brown, was the enemy of Rev. Peter Duncan, both before and since Duncan left the Methodist Episcopal Church, and the *belief* of the certifiers in another fact, to-wit: that Brown would sign anything that Z. M. Taylor would request him to sign, that would prejudice the character of said Duncan.

It is not supposed that it will be contended that the *fact* stated in the certificate, to-wit: that Brown is

the enemy of Duncan, is actionable, but it was contended in the court below, and so held by the circuit judge, that the opinion or belief, as expressed by the authors of the certificate, and as published by Duncan, was actionable; and that all the defendants were alike guilty of having printed and published a libel on the plaintiff. The opinion expressed in the paper is that Brown would certify anything that Taylor would require of him, that would prejudice the character of Duncan. What character does this certificate assume that Brown would, at Taylor's request, certify? Certainly not Duncan's moral character as a man and citizen, but rather his religious or moral ministerial character. If so it is denied that it is slander to speak disparagingly of the ministerial character of any one; and no action can be sustained for the publication of the matter of this paper. The defendants could only be responsible for publishing of the plaintiff that which would subject to a suit or to infamous punishment. If the plantiff expects to recover for injury to his ministerial character, it is necessary to allege special damage. It is assumed that the ministerial character of Duncan was not assailed, because he was arraigned, not for immorality, but for organizing a church, in his view, better suited to the genius and spirit of our institutions than the Methodist Episcopal Church, and that when he was not, as he alleges, amenable to the Methodist Episcopal Church—having seceded. The point to which the certificate of Brown had application was the fact of whether Duncan had on the 9th of November, 1852, acknowledged himself amenable to the Methodist Episcopal Church, which was denied by Duncan and asserted by Taylor. Brown's certificate is to the affirmative, and in regard to his certifying to that point for Taylor, was the publication made. Taylor made a publication in regard to the trial and expulsion of Duncan, in which was embodied the certificate of Brown, to which Duncan replied, and in that reply was the paper published charged to be libel-

ous; not for any malicious purpose, or to defame the moral character of Brown, but to place the religious feud between Taylor and Duncan fairly before the world, and in doing this they say "that Brown would sign anything that Taylor would request him that would prejudice said Duncan's character." It is true that the term ministerial or christian character is not used, but that such was their meaning can scarcely be doubted. The paper was to be used before the church, both the old and the new.

For these reasons, and others which will suggest themselves to the court, it is insisted that the demurrer was well taken.

2. It is insisted that the court erred in giving and in refusing instructions.

It is insisted that the action is not maintainable unless the publication was made maliciously, and that the occasion justified the act, and repels the implication of malice, which in the general is inferred from the falsehood of a slanderous imputation. *Hart vs. Reed,* 1 *B. Monroe,* 168, the principle of instruction No. 2.

The third instruction asked by defendant's counsel was in substance to inform the jury that the trial before them was a private matter, and the damages to the plaintiff, if any, by any injury either real or supposed, that the Methodist Episcopal Church, its ministers or members might suffer by reason of the alleged libel, but must be measured by plaintiff's own character and the injury it had suffered by reason of the publication. This should have been given.

3. On the question of fact whether Brown was present at the time he certifies he was: it is insisted that the weight of the testimony is for the defendants.

*Stuart,* for appellee—

1. The matter contained in the publication was clearly libelous, and the court so decided upon the demurrer to the petition, and that to publish matter,

as the belief of the publisher, is actionable. There
is no ground for the distinction attempted between
an attack upon the ministerial and moral character
of an individual.

2. It is libelous and actionable to write and pub-
lish of an individual that which renders him *odious* or
*ridiculous*, and which, if spoken, would not be ac-
tionable. (*King vs. Lake, Hard.* 470.) The libel
charged the plaintiff with having presented a peti-
tion to the house of commons, "stuffed with illegal
assertions, clogged with gross ignorances, absurdities
and solecisms." Held, that spoken merely, the lan-
guage would not be actionable, yet having been
written and published they were actionable. Hosmer,
Justice, in *Stowers vs. Converse,* 3 *Con. Rep.* said: "It
is because the imputations are written and may cir-
culate extensively, and never be forgotten, that the
law concerning libel is so different from the rules rel-
ative to verbal slander." How glowing the rhetoric
of Burke, when he exclaims, "scandals merely oral
could spread little and must perish soon. It is
writing, it is printing, more emphatically, that imps
calumny with those eagle wings on which, as the
poet says, *immortal slanders fly.* By the press they
spread—they last. They leave the sting in the
wound."

In *Villers vs. Monsley,* 2 *Wilson,* 403, Wilmot, Ch. J.
said: "If any man deliberately or maliciously, (if de-
liberate the malice is presumed,) publishes anything
in writing concerning another, which renders him *ri-
diculous,* or tends to hinder mankind from associating
with him, it is libelous."

Gould, J. to the like effect. And in *Shipley vs.
Todhunter,* 7 *Car. & P.* 680–9, Terrill, J. said:
"Any written communication which bears upon the
face of it any charge which tends to vilify another
is libelous." (See, also, *Woodward vs. Dawson,* 2
*Man. & Ry.,* remarks by Lord Tenterden, Ch. J.;
*Forbes vs. King,* 1 *Dow,* 672, *McGregor vs. Thwaites,*
3 *Barn. & Cress.* 24; *Parmeter vs. Couplin,* 6 *Mea. &*

DUNCAN, &c.
vs.
BROWN.

*Welby*, 105; *Cooper vs. Greely*, 1 *Denio*, 48; *Cooper vs. Stowe*, 24 *Wend.* 434; *Crawford vs. Wilson*, 4 *B ar. Sup. C. Rep.*; *Rundell vs. Myers and others*, 3 *Yeats*, 518; *McCorkle vs. Brims*, 5 *Binney*, 354; *Williams vs. Karnes*, 4 *Humphreys*, 9, 11, *Tenn. Rep.*; *McGee vs. Wilson*, 2 *Bibb*, 187; *Shelton vs. Nance*, 7 *B. Monroe*, 128.) In *the State vs. Henderson*, 1 *Richardson*, 180, *So. Car. Rep.* it is said: "That the essential ingredient of a libel is that it should be a malicious publication, and where the obvious design and tendency of such publication is to bring the subject of it into contempt or ridicule, it will be a libel, although it impute no crime liable to be punished with infamy."

2. The main point in the case is whether the publication was true or false. The defendants traced the plaintiff from childhood to manhood to seek out his indiscretions, and thereby to reduce the damages; and to prove also that he was not present when the fact occurred about which he certified. But the testimony was all of a negative character. He was sustained by affirmative testimony to the satisfaction of the jury.

3. The instructions of the court were correct. The jury were told that malice was the gist of the action; and that if they found from the evidence that the matter published of Brown, the plaintiff, was false, they might then presume malice.

It is contended that the jury were bound to infer the malice. The defendants failed to show the truth of the publication, and thereby make out the defense set up. They have affirmed the charge by their defense, and failed to sustain it, thereby aggravating the act. We ask an affirmance.

January 4.

Chief Justice MARSHALL delivered the opinion of the Court.

This is an action by petition, for a libel, brought by Robert R. Brown, plaintiff, against Peter Duncan and six others, defendants. The alleged libel, as stated in the first count, is as follows: "Mr. Taylor

affects to prove by the solitary statement of an unfortunate young man by the name of Robert Brown, (meaning the plaintiff,) that I, (meaning the defendant Duncan,) admitted amenability on the 9th day of November. This is very little short of subornation of forgery, [perjury,] on the part of Mr. Taylor, for he well knew that I told him no such thing. He could not have forgot our conversation but two days before at Mr. Glasscock's. He knew very well that I had withdrawn from the M. E. Church, as I have proved, and he ought not to have induced this poor young man to certify to a thing which Mr. Taylor knew to be false. But Mr. Taylor was in great straits. A drowning man will catch at straws. He could not get a man of reputation for truth to help him on this point, and hence he had recourse to Brown. The neighbors of Brown thus testify of his regard for truth.

"We, the undersigned, do hereby certify that we have known Robert R. Brown from his boyhood to the present, and we know that he has been an enemy to the Rev. Peter Duncan, both before and since he, (the said Duncan,) left the Methodist Episcopal Church, and we believe that he Brown, (meaning the plaintiff,) would put his name to anything that Z. M. Taylor would request him to sign that would prejudice the said Duncan's character." Signed with the names of six persons who are named as defendants with Duncan.

The second and third counts set forth only the certificate and signatures above referred to. But each count avers a joint publication by all, and also contains numerous inuendos. And as in our opinion the matter stated, with the allegation that it was false, and its publication malicious, is *prima facie* libelous, and sufficient to sustain an action, the demurrer of the defendants was properly overruled. There seems indeed to have been no necessity for the second and third counts, and as every thing essential is or might have been contained in the first count, the second and third, though each containing *prima facie* a cause of

DUNCAN, &c.
*vs.*
BROWN.

1. After a demurrer to a petition is overruled, and answer filed, no objection to the declaration is available unless it amount to cause for arresting the judgment.

action might have been stricken out on motion, as complicating the case by unnecessary repetitions. The answer of the defendants discloses the fact, which, on the face of the petition and of the alleged libel as therein stated, could at most have been matter of vague inference, that some short time before the publication complained of, a letter over the signature of Z. M. Taylor had been published in public newspapers at Nashville, Louisville, and Elizabethtown, which is made a part of the answer, and from which the following extract is therein set forth, viz: "But did he, (meaning the defendant, Peter Duncan,) consider himself responsible to the church for his conduct. He did until he saw his crimes would have to be investigated, and would result in his expulsion. Until then he never dreamed that he was irresponsible. On Tuesday after his Rock Spring speech, I went to see him, and as another heard our conversation, I will let him speak. It is, *Robert R. Brown, a young man of fine reputation*: This is to certify that on Tuesday, the 9th of November, 1852, I heard Rev. Z. M. Taylor ask Duncan in regard to the final determination of himself and two others named. Duncan said: We have concluded to wait and see if you will adopt the high-handed measure of bringing us to trial, but if you will let me alone, I will quietly get out of your way before the quarterly meeting at Bewleyville. Brother Taylor said he would take no pleasure in inflicting punishment on Duncan, but not wishing to take any advantage he felt it his duty to tell him he thought he would be charged. Duncan turned abruptly and said he did not care." Signed, ROBERT R. BROWN.

The answer proceeds to say: "Thus the plaintiff became a witness giving a certificate to said Taylor intended to be published and it was published and used by said Taylor to disparage and degrade the defendant, Peter Duncan." On the appearance of said publication the defendant, Ducan, felt himself under the necessity of making a defense, and therefore

called upon the other defendants to sign the certificate quoted in the petition, and the other defendants say that when so called on, for the purpose of assisting said Duncan to vindicate himself, and not intending to slander and defame the plaintiff, and without malice against him, they did sign said certificate. And they say that its statements according to the true intent and meaning thereof, were and are true, and that they made no other publication. And the defendant, Duncan, says he did cause to be printed and published in a newspaper in Louisville, in a letter over his own signature, which is referred to as part of the answer, and in which appears, as a part thereof, the certificate and remarks quoted in the plaintiff's petition; and he says he wrote and published the same, not for the purpose of slandering and defaming the plaintiff, and without malice against him, but because he felt it due to his own reputation to defend it, and he says that the statements of said certificate fairly construed, and according to the true intent and meaning thereof, as to the plaintiff's action, are true, and were so at the time of the publication. The defendants also gave notice, appended to their answer, that they would endeavor to prove, in support of their answer, various specified instances of falsehood and misconduct on the part of the plaintiff, and that he is of general bad reputation.

The two published letters of Taylor and Duncan, referred to in the answer, are copied at large in the record as exhibits; and on this state of the pleadings the parties went to trial. The defendants adduced evidence without objection, in proof of the particular charges appended to their answer, with respect to which the plaintiff adduced opposing testimony, and many witnesses were examined by both parties with respect to the character of plaintiff; the greater number speaking favorably, and some of them decidedly, of his good character and conduct. There was some testimony to the effect that before the date of the conversation stated in the certificate signed by the plain-

DUNCAN, &c.
vs.
BROWN.

tiff, the defendant, Duncan, had commenced organizing a Methodist Congregational Church, and that he had indicated decisively to Z. M. Taylor, in the conversation at Mr. Glasscock's, also before the date of the conversation referred to in the plaintiff's certificate, that he had left the M. E. Church; though Z. M. Taylor, who was a witness, states that he received a different impression from the conversation at Mr. Glasscock's. He also states that he had prepared the certificate which was signed by Brown, and sent for Brown, read it over to him, said that was his own recollection of the conversation, and asked him if it accorded with his; that he said it did, then looked at it, (or as he had before said, read it,) and signed it.

The jury, under instructions presently to be noticed, found a verdict in favor of the plaintiff for $350. The motion of the defendants for a new trial was overruled, and a judgment rendered against them, which they seek to reverse, on the ground, mainly, that the court erred in overruling their demurrer to the petition, and also in giving and refusing instructions.

2. To write and publish of one that he would put his name to anything that another would request him to sign that would prejudice a third person, is *prima facie* libelous.

We have already said that the petition on its face showed, *prima facie*, a good cause of action. The matter published was apparently calculated to degrade the plaintiff, and to bring him into disrepute. It was therefore libelous in its character, and unless published upon a justifiable occasion, and without express malice, it was, if untrue, a sufficient cause of action. It is alleged to have been false, and to have been published with malice ; and if the occasion was justifiable, the petition does not state the occasion, but leaves it to conjecture. This must have been the conclusion, if the case had stood here upon the petition and demurrer alone. But, after the demurrer was overruled, the defendants filed their answer as a defense upon the facts, and a trial having been had upon the evidence, and a verdict found against them, the petition does not now stand upon demurrer, but can only now be impugned for such errors as might

be available in arrest of judgment. We do not, however, perceive that there is any defect in the petition which would furnish available grounds for arresting the judgment. And even if the answer be regarded as presenting a bar to the action, still as the verdict, unless infected by some error in law or fact, must be deemed sufficient to disprove it, the defendants can rely upon no ground for reversing the judgment but such as may go to invalidate the verdict, and thus tend to a new trial of the facts, and a new assessment of damages.

The bill of exceptions does not show that the entire publications referred to in the answer as being over the respective signatures of Z. M. Taylor and the defendant, Duncan, were in evidence before the jury. The mere reference to them as a part of the answer did not make them evidence, and they might, notwithstanding such reference, have been objected to, and would have been rejected unless proved. Although therefore they are copied in the record as papers referred to in the answer, they cannot be regarded as a part of the evidence before the jury. There is, perhaps, sufficient evidence to authorize the assumption that the certificate copied in the answer as the certificate of Brown, (the plaintiff,) detailing a conversation between Duncan and Taylor, was signed by Brown at the request and for the use of Taylor; and we assume, for the present, that the introductory observations also copied in the answer, showing that the certificate was intended, and supposed to prove an acknowledgment on the part of Duncan, that he was then responsible or amenable to the tribunals of the M. E. Church, and that it was in fact used for that purpose by Taylor, formed a part of the case before the jury, or at least a part of the case upon which the court was to declare the law in aid of the jury in their decision of the case.

But even the facts thus assumed, although they might require from Duncan a denial and disproof of the alleged acknowledgment, if he had not made it, or might justify the suggestion of Brown's youth and

DUNCAN, &c.
vs.
Brown.

3. The mere reference in an ordinary petition to papers alleged to constitute a libel, does not make them part of the petition, or authorize the reading of them to the jury, without proof of their execution.

inexperience, or zeal, and of his great confidence in Taylor, or dependence upon him, or of Taylor's influence over him, as a ground of disbelief, do not seem to require, or to justify the general imputation upon his character for truth, which may be implied in Duncan's reference to the estimation in which his regard for truth is held by his neighbors, and in the suggestion that Taylor resorted to the statement of Brown because he could not get any man of reputation for truth to help him; nor was it requisite or justifiable, so far as appears, that the other defendants who certified in aid of Duncan, should have insinuated that Brown would state an untruth to injure Duncan. These imputations, made under the circumstances assumed, could only be justified by their truth.

But although the law would not justify the publication of a libelous charge under the circumstances stated, it pays some regard to the passions and infirmities of men, and to that higher principle which impels a man to vindicate his own character and fame, and which excites and inflames him when his good name is assailed; and, therefore, circumstances of provocation which are insufficient to justify, may yet, by weakening the inference of malice, palliate the publication of a slander or libel, and may operate to mitigate the damages to be recovered for it. And in the present case, if in a virulent controversy between Taylor and Duncan, Brown became a voluntary witness for Taylor, to prove a fact on which the opprobrious remarks set forth in the answer were founded, the imputations made upon the character of the witness in repelling the assault in which he had aided, though carried farther than was justifiable, was in some degree palliated by the circumstances, which tend to show that the attack upon the witness was induced not so much by malice towards him, as by a desire on the part of Duncan to vindicate himself, and by that excitement under a charge deemed opprobrious and degrading, which naturally confounded with the principal assailant, one who was regarded

4. Although the publication of libelous matter may not be justifiable, yet the law so far regards the passions and infirmities of men as to permit circumstances of provocation, though not amounting to a justification, to be given in evidence to palliate and weaken the inference of malice, and mitigate the damages.

as his abetter and accessory. We do not concede the position contended for, that the purpose for which Brown's certificate was given and used in the controversy between Taylor and Duncan, constituted a justifiable occasion for the libel against Brown as published, or sufficed in itself to repel the legal inference of malice, assuming the publication to have been false. The court, consequently, did not err in refusing to give the second instruction asked for by the defendants, which submitted to the jury the question whether the libel was published on a justifiable occasion. That was a question which the jury could not decide without being first told what facts would constitute a justifiable occasion; and no such facts were proved.

It is not sufficient, as supposed in the first instruction asked for by the defendants, "that from the plaintiff's character and particular instances of bad conduct, they should have believed that he would state a falsehood for the purpose of injuring one whom he hated or disliked." To authorize a verdict in their favor on the ground of their belief, there should at least have been reasonable grounds for it in facts proved before the jury, and believed by them. This instruction was properly refused. But the third instruction moved for by the defendants was abstractly right, and as its refusal may have prejudiced the case of the defendants before the jury, we think it should have been given in the form in which it was asked, or in some other. The court was asked to tell the jury that if they should find damages, they should not be estimated upon consideration of any injury to the Methodist Church, its ministers or members, which was refused. Such an instruction, though abstractly correct, might well be refused in ordinary cases. But it is evident this case is connected with, and grew out of, a controversy in the M. E. Church, and, indeed, that it relates to a scism, produced, or, at least, attempted to be effected by Duncan, in which there seems to have been consider-

Duncan, &c.
vs.
Brown.

5. The court should not instruct the jury that matter which is *prima facie* libelous was justifiably published, without informing the jury what would justify such a publication.

6. In a suit for libel growing out of an ecclesiastical controversy, it is proper to instruct the jury that damages can be assessed for the individual injury alone, and not for any injury to the church, or other members than the plaintiff.

DUNCAN, &c.
vs.
BROWN.

able excitement, and there were doubtless warm partizans on both sides. In such a case the church feeling might be difficult to repress in considering and determining questions immediately connected with the difficulty in the church, and the presentation of which involved the character of her ministers, and the feelings of her members. In such a case the party had a right to have the jury distinctly warned upon the subject. This object was not, in our opinion, properly accomplished by the instruction which would generally be sufficient, "that if the jury should find for the plaintiff, they should, in estimating the damages, find such as under all the circumstances and proof in the case they conceive to be right and proper for the injury done to the reputation and feelings of the plaintiff." The refusal of the instruction as asked is therefore deemed erroneous.

7. The words of a publication charged to be libelous, are to be taken according to their ordinary and common acceptation.

The first and second instructions given by the court are liable to the objection that in stating to the jury the question to be decided by them in order to determine the case one way or the other, they are told, in effect, that their decision is to depend upon the question whether from the evidence before them they believe that the plaintiff was or that he was not "so corrupt and depraved that he would sign anything Z. Taylor would request him to sign to injure Duncan's character." It would have been better, and certainly more appropriate, to put to the jury the simple question arising on the face of the libel itself, whether they believed that the plaintiff would have signed anything which Z. Taylor would request him to sign that would prejudice Duncan's character. The instruction puts the harshest construction and the strongest coloring upon the libel, which not only does not, in terms, charge the plaintiff with corruption and depravity, but which might be found true, without necessarily imputing to him either of these grades of turpitude. By way of illustration, we may refer to a portion of the published letter referred to in the answer of the defendants, as being over the signature of Mr. Taylor, in which,

speaking of a document signed by eight names, and which had been used by Duncan, he says one of them told him, in presence of three witnesses, "that he never had read the document, and did not know what he signed, but thought Duncan would not want his name to anything that was wrong." Certainly this statement tends somewhat to degrade, and at least to render ridiculous the individual referred to, and who is named in the context. But it implies a charge of facility and confidence, or of excitement and partizanship, rather than of corruption and depravity. It has been long the settled doctrine that libelous or slanderous words are not, as a matter of law, to be taken either in *graviori* or in *mitiori sensu*, but are to be generally understood according to their popular sense, which, as we think, must also have reference to the occasion and subject matter. In this case, the words were used in reference to a church controversy in which Taylor and Duncan were the contestants on opposite sides. The libel was, in fact, a part of this controversy, written to be used by one of the contestants, and referring to a certificate which was also a part of the controversy on the other side, made for that use by the individual who certified, and who may be regarded as a partizan on that side which was represented by Mr. Taylor. It is in view of that contest that the defendants gave their certificate; and certainly the jury had a right to consider what they said of the plaintiff, not as said of him abstractly and as an individual merely, but as said of him as a partizan under the lead of Mr. Taylor, certifying for the advancement of his cause. And in this view they might have considered the belief expressed by the defendants as imputing and intended to impute nothing more than facility of disposition, excess of zeal, and a high degree of confidence in Mr. Taylor, who, the plaintiff might well suppose, would not ask him to sign anything wrong, and whose impressions or inferences with regard to a conversation heard by both, and affecting the matter in contest, he might be ready to

adopt without question. The instruction not only cuts off the right of the jury to interpret the libel in its milder sense, which, on the ground just mentioned or others, they might have done, but it expounds the libel in its harshest sense, and tells the jury that they must find it to be true in that sense, to justify a verdict for the defendants. We think the instruction is wrong in substance, and that it must necessarily have prejudiced the case of the defendants before the jury.

It is to be observed, further, with respect to the terms and import of the libel, that it does not say, in sweeping terms, that Brown would sign anything that would injure Duncan's character, but that he would sign whatever Z. M. Taylor would request, that would prejudice Duncan's character. Can it be assumed that the signers of this libel meant to say, or should be understood as intimating, either that Taylor would request, or that Brown would, merely on his request, give his signature to a statement charging that Duncan had been guilty of murder or other heinous crimes against the laws? Such an assumption would probably be unjust to all the parties referred to. And it would seem to be reasonable that in order to get at the true sense of the writing now in question, it should be construed with a view—1. To the general circumstances under which it was written, viz: in the midst of a warm ecclesiastical controversy. 2. To the particular circumstance which called it forth, viz: that Brown had given a certificate with respect to a fact involved in the controversy, and prejudicing the character and cause of Duncan in the controversy, and used with that effect and for that purpose by Taylor. And, 3. That it was in reference to this particular statement of the certificate, and the purpose for which it was furnished and used, that the libelous writing was made and published. Whence it might be fairly assumed that the writers meant only to charge that Brown would, at the request of Taylor, sign anything with respect to a fact involved in the pending controversy or concerning it, and which might

prejudice the character and cause of Duncan, and Duncan's prefatory remarks might be susceptible of a similar interpretation. Even in this mitigated sense, the charge, if false, would be libelous and actionable, unless published without malice express or implied. If, however, the imputation in this mitigated sense was true, or if, though not true, it was made in good faith, without express malice, under the belief that it was true, and on an occasion which justified the publication of what the parties actually believed, though it might turn out to be untrue, and although it was of a libelous character, the jury might have found a verdict for the defendants. And even if the occasion or circumstances did not completely justify the utterance of the libel, under the belief of its truth, and although the law would imply malice from its untruth, still the circumstances (including the belief of its truth, which would tend to disprove the existence of actual or express malice,) might diminish the force even of the legal implication of malice, and tending thus to palliate the conduct of the defendants, might tend also to mitigate the damages to be found against them.

Under the mildest interpretation which can be given to the published matter which is complained of in this action, we are of opinion that it imputes to the plaintiff a willingness to sign any statement touching the pending controversy which Taylor might request, and which would prejudice Duncan and his cause ; and that such an imputation, if untrue, is libelous and *prima facie* the proper ground of an action. And, although an individual assailed in the public prints may of course resort to the same medium for repelling the assault, and may publish certificates against certificates, and although considerable latitude may be allowed both to himself and his friends who may aid in his vindication, neither he nor they can occupy the attitude nor claim the immunities of party and witnesses in a court of justice. But they must conduct the defense or the assault with due regard to the

DUNCAN, &c.
*vs.*
BROWN.

peace and quiet of the community, and to the rights and character of individuals. And whatever may be thought of the right to retort opprobrious epithets against one who has first used them, there is no right to publish an untrue and libelous charge against one who merely certifies to the statement of a fact which he professes to know, and which, though used as a ground of opprobrium, does not in itself import any opprobrious imputation, and is not accompanied by any such imputation in the context of the certificate itself. Those who make the libelous charge under such circumstances, do it at their peril, and their own belief that it is true will not exempt them from responsibility, however much it may palliate their offense.

Upon the whole case, we think the court should have instructed the jury as to the different senses or interpretations of which the libel was susceptible, leaving them to determine under all the circumstances in which of these senses it was uttered and intended to be understood; and should have told them that if true in the sense adopted by them as its true meaning, upon which question the truth or untruth of Brown's certificate might have a bearing, they should find for the defendants, but if false in that sense, they should find for the plaintiff such damages as, in view of the injury done to his character and feelings, and of the degree of malice indicated by the nature of the charge, and the circumstances under which it was made, seemed to them just and proper.

The case as now presented does not require any further explanation than has already been given of the circumstances which would or would not constitute a justifiable occasion for the publication complained of. We have already said that if the libelous matter be untrue, the facts stated in the answer do not justify it.

The opinions of the Circuit Court, in giving and refusing instructions, being inconsistent with the principles of this opinion, the judgment is therefore reversed, and the cause remanded for a new trial.